CHARTER OAK ESTATES, INC. *v.* PAUL T. KEARNEY
ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 2—decided March 24, 1971

*John F. Lambert,* for the appellants (defendants).

*Robert E. Nickerson,* with whom was *John B. Marsh, Jr.,* for the appellee (plaintiff).

RYAN, J. In the first count of this action the plaintiff seeks to recover the reasonable value of certain work, labor and services performed at the request of the defendants consisting of the relocation and resurfacing of a driveway and the draining and filling of a pond on lot 5 of the defendants' land, of the reasonable value of $18,707.25. The second count is predicated on the same allegations of fact but damages are claimed on the ground of unjust enrichment.

The defendants answered admitting that demand for payment had been made by the plaintiff as alleged in the first count, and denying the remaining allegations of both counts. The defendants also pleaded three special defenses. In the first special defense it was alleged that the plaintiff represented to the defendants that the cost of the work involved would not exceed the sum of $2500; that the defendants relied on the representations of the plaintiff, informed the plaintiff of such reliance and of the necessity of limiting the cost to $2500 and agreed to have the work done; that the plaintiff proceeded to do the work and at no time informed the defendants that the cost to the defendants would exceed $2500 until February 24, 1966, after the completion of the work. In the second special defense the defendants alleged that at the closing, when title to the properties in question was conveyed to the defendants, the plaintiff set forth claims for various additional work and extras but made no claim for payment for the additional work sought in this action, and that the payment of these extra sums was in full settlement of all extras and obligations between the parties to the date of the closing on December 6, 1965, other than the sum of $2500. In the third special defense the

defendants alleged that the failure of the plaintiff to make a claim for that portion of the work furnished prior to the date of closing was a waiver by the plaintiff of any claim for this sum. The plaintiff denied the allegations of the defendants' special defenses. The trial court rendered judgment for the plaintiff to recover the sum of $18,731.50 from the defendants on the first count. Judgment was rendered for the defendants on the second count. From the judgment on the first count the defendants have appealed to this court.

In their assignments of error the defendants have made a wholesale attack on the finding, despite our repeated strictures against this practice. *State* v. *Dukes,* 157 Conn. 498, 499, 255 A.2d 614. The defendants seek the addition of forty-four paragraphs of their draft finding on the ground that the facts set forth therein were admitted or undisputed, and claim that fourteen paragraphs of the court's finding were found without evidence. "Facts can be added to the finding only when they are admitted or undisputed. A fact is not admitted or undisputed merely because it has not been contradicted. The question of credibility is one for the trier. *Shakro* v. *Haddad,* 149 Conn. 160, 162, 177 A.2d 221." *Jarrett* v. *Jarrett,* 151 Conn. 180, 181, 195 A.2d 430. If the claimed additions are implicit in the finding or are facts not material to the issues in the case, the trial court is not required to include them in the finding. *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619. The additions sought by the defendants are either implicit in the finding or not material or undisputed. None of the findings attacked in their brief is unsupported by the evidence.

It should be noted at the outset that while the

complaint alleged "draining and filling a pond", the parties stipulated that the claim was for labor and material for an additional driveway and for filling in a depressed area on lots 4 and 5.

The court found the following facts. Richard E. Doyle, the principal witness of the plaintiff, was the president of the plaintiff corporation and had been in the construction business since 1948 as a construction superintendent and estimator. All the negotiations and the acts of the plaintiff corporation were carried on by Doyle, which fact was known to Paul T. Kearney, hereinafter called the defendant. All the negotiations and the acts of the defendants, Paul and Elizabeth Kearney, were conducted by Paul Kearney. Doyle and the defendant were on friendly and social terms and each had confidence in the other. In 1965 the plaintiff had a number of lots for sale on Nathan Hale Drive in Stamford. Early in 1965, the defendant entered into negotiations with Doyle to purchase a lot in this area in order to have a house built thereon by the plaintiff. On May 15, 1965, the plaintiff and the defendant signed a contract wherein the plaintiff undertook to construct a dwelling on lot 4 of this development, and to convey lot 4 and the dwelling to the defendants. The contract was composed of the basic contract, specifications and plans. In late August and early September, 1965, the plaintiff orally agreed to sell lot 5 to the defendants for the sum of $16,000. No money was paid in connection with this agreement until the closing of title on December 6, 1965. In early September, 1965, when the plaintiff and the defendants discussed the purchase of lot 5 by the defendants, Doyle suggested to the defendant that a depressed area on lots 4 and 5 be filled in for aesthetic purposes. The area to be

filled was horseshoe-shaped, ranging from twenty-
seven to thirty-five feet in depth, and located on
lots 4 and 5. At times water flowed from a pond
located to the north of the subject property under-
neath Nathan Hale Drive through the depressed
area and thence to a pond located on lot 5. Doyle
informed the defendant that while he did not know
exactly what the cost of such work would be, he
would estimate its cost at around "$2500". This
estimate was based on Doyle's expectation of obtain-
ing fill from other sites in the area owned by the
plaintiff corporation including the property being
sold to the defendants. The defendant knew when
this estimate was made to him that it was based on
the fact that the materials were expected to come
from the plaintiff's property and the property being
purchased by the defendants. In September, 1965,
the plaintiff proceeded to do the work. Subsequent
to the agreement for the sale of lot 5 and the agree-
ment concerning the filling operation, the plaintiff
and the defendants agreed to extend the length of
the driveway partially over the area to be filled in.
In October, 1965, Doyle became aware of the fact
that costs were going to run beyond expectations
because he was obliged to go to the open market to
buy fill. The cost of fill obtained and the equipment
rented was skyrocketing. Doyle explained to the
defendant the difficulties he was having in getting
fill because of a large Stamford project which was
underway, whereas previously he had been getting
the fill from the plaintiff's own land, the latter
method, of course, being of benefit to the
defendant and obviously reducing costs. The de-
fendant knew in October, 1965, that as of that time
Doyle was forced to go into the open market to
purchase fill. This was an expenditure not origi-

nally contemplated by the parties. In early October, 1965, the plaintiff commenced purchasing outside labor and material in connection with the filling operation. All labor, machine work and material used for this filling operation and the work on the additional driveway were accounted for ·on a day-to-day basis to the plaintiff's employees. Doyle himself did not keep a record of and was unaware of the exact·cost involved since he was being pressed by the defendant to get the house completed. Doyle himself did some of the work on the house and spent all his waking hours in the Kearney house to complete its construction. When the defendant was informed in October, 1965, that costs were exceeding the estimate of about $2500, he inquired as to how much this amounted to, and was informed by Doyle that he could not tell him at that time. The defendant thereupon told Doyle to proceed with the job and get it done and keep the costs down to a "slow roar". The period covered by these operations began in September, 1965, and terminated in late January, 1966. Sometime in December, 1965, the date of the closing involving lots 4 and 5, Doyle and the defendant had a further discussion at which time Doyle told the defendant that since the work of filling and relocating the driveway had not been completed, the billing on those items would be deferred until the work was finished.

At the closing, when both parties were represented by attorneys, the parties, although arranging for an adjustment with reference to other items involved in the sale of the premises, did not take up the question of the cost of the additional work, which is the subject of this suit, and there was no discussion at the closing either between the parties or their attorneys as to the cost of filling, or relocat-

ing the driveway since there had been an understanding between the defendant and Doyle prior to the closing that this would be billed as a separate item upon completion of the work. At that time, since much more fill was required, all the bills were not available. On December 6, 1965, the defendants paid the plaintiff approximately $125,500. Of this sum $14,850 was represented by a note.

A total of 11,300 cubic yards of fill was purchased by the plaintiff to accomplish the filling operation. This operation and the relocation of the driveway were simultaneously performed and thus it was impossible to break down the cost as between the two operations. Invoices were submitted to the court representing labor and materials purchased by the plaintiff solely for the purpose of filling in the depressed area and for the extension of the length of the driveway. These bills represent moneys actually expended by the plaintiff in relation to this work. At no time did the defendants request a breakdown as between the two operations. Subsequent to the completion of the filling operation and relocation of the driveway, the plaintiff submitted to the defendants a bill in the amount of $18,731.50, which sum represented out-of-pocket expenses incurred by the plaintiff to the outside suppliers of the labor and material. By December 5, 1965, the day before the closing, the plaintiff had incurred charges attributable to the filling operation which totaled $13,292.35. Doyle himself did not know the amount of these charges at that time.

The court concluded, inter alia, that when the plaintiff realized in October, 1965, that the costs were exceeding the estimate of $2500 because of the unavailability of fill from the subject property and other properties owned by the plaintiff, the defend-

ants were informed of the facts; that the defendants when given this information directed the plaintiff to proceed with the work, relying on the confidence they had in Doyle to keep expenses down; that because of factors beyond the control of the parties the expenses mounted; that the work was done by the plaintiff with the expectation of payment, and under circumstances wherein the defendants knew, or as reasonable persons should have known, that the plaintiff expected to be paid; that there was an implied agreement that the defendants would pay to the plaintiff the reasonable value of all the labor and materials furnished; that the plaintiff's charges were based on its out-of-pocket expenses and were fair and reasonable when measured by a right standard of honesty and fair dealing on the part of the plaintiff; and that the fact that costs were far beyond those anticipated by the parties does not defeat the plaintiff's right to compensation.

It is the general rule that a promise to do that which one is already bound by his contract to do is not a sufficient consideration to support an additional promise by the other party to the contract. *Dahl* v. *Edwin Moss & Son, Inc.,* 136 Conn. 147, 154, 69 A.2d 562; *Blakeslee* v. *Board of Water Commissioners,* 106 Conn. 642, 652, 139 A. 106; 1A Corbin, Contracts § 171; 17 Am. Jur. 2d 929, Contracts, § 462. In this case the defendants do not claim lack of consideration to support the implied promise of the defendants to pay additional consideration to the plaintiff to do what it was already contractually bound to do. The basic claims of the defendants are that they should not be liable because: (1) the cost exceeded not only the original estimate, but was far beyond the anticipation of either party; (2) the

plaintiff knew that the costs were exceeding any reasonable expectation of the parties but did not inform the defendants of this fact; and (3) the plaintiff failed to prove its damages with reasonable certainty.

In October, 1965, when Doyle became aware that the costs were going to run beyond the original expectation of the parties due to the fact that he had to go into the open market to acquire fill, and because the cost of the fill to be obtained and the rental of equipment was rising sharply, he informed the defendant. The defendant wanted to know what the additional cost would be and was told by Doyle that he could not tell him at that time. The defendant thereupon instructed Doyle to proceed with the job and to get it done, and to keep the costs down to a "slow roar". The defendant was anxious to have his house completed so that he could occupy it with his family. The situation was one wherein the defendant knew that the ultimate cost of the work was unknown when he instructed Doyle to proceed with the job and to get it done. Obviously, he was expressing his desire that the costs be kept down, but there was no definable limit suggested. It is true, as claimed by the defendants, that the ultimate cost of the job was well beyond the expectation of both parties. It is also true that both parties were aware of the work being done. The defendants moved into the house in December and the work continued into the month of January.

Under these circumstances an implied contract would arise if services were rendered and materials furnished by the plaintiff at the request of the defendants under an expectation that they were to be paid for, and if the defendants either intended to pay for them or the services or materials were

furnished under such circumstances that the defendants knew, or as reasonable persons should have known, that the plaintiff expected payment. *Butler* v. *Solomon,* 127 Conn. 613, 615, 18 A.2d 685; *Casey* v. *McFarlane Bros. Co.,* 83 Conn. 442, 443, 76 A. 515. The determination of an intent to pay for the services is always a question of fact for the trial court under all the circumstances of the case.

The trial court concluded that the labor and materials were furnished by the plaintiff with the expectation of payment and under circumstances wherein the defendants knew, or as reasonable persons should have known, that the plaintiff expected payment and that there was an implied agreement that the defendants would pay the plaintiff the reasonable value of the labor and material furnished. It also concluded that the plaintiff's charges for labor and materials were based on actual out-of-pocket expenses incurred by the plaintiff to the outside suppliers of the labor and materials. This precluded any possibility of profit to the plaintiff for the work in question. The conclusions of the trial court that the charges of the plaintiff were fair and reasonable and that the fact that the costs were far beyond those anticipated by the parties does not defeat the plaintiff's right to compensation for those costs, cannot be disturbed. The claim of the defendants that the plaintiff failed to prove its damages with reasonable certainty is without merit.

The defendants assign error in an evidentiary ruling by the trial court. In their first special defense the defendants alleged that Doyle represented to them that the cost to fill in the areas in question would not exceed $2500; that at the outset the defendants did not know that the cost of the additional work would exceed $18,000 and that had

they been informed that the cost would exceed $2500 they would have refused to permit the work to continue. The defendant was asked on direct examination if he would have permitted the plaintiff to enter into performance of the work if he had been informed that the so-called filling operation was going to cost him $18,000. The plaintiff's objection to the question was sustained by the trial court and the defendants duly excepted to the ruling. The court refused to permit the defendants to state the reasons for the exception. Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made. Practice Book § 226. The defendants urge that they should have been permitted to state the grounds for their claim. This is correct. The defendants urge in their brief that the purpose of the question was to bring themselves within the reasoning of this court in the case of *Cecio Bros., Inc.* v. *Greenwich,* 156 Conn. 561, 568, 244 A.2d 404. In that case the plaintiff, a subcontractor, furnished extra fill in disregard of the express contract requirements for prompt notice to the owner or contractor, and written authorization, as conditions precedent to any claim for compensation. The plaintiff alone knew, or had the means of knowing, that the work it was doing would be claimed as an extra. The facts in the *Cecio* case were quite different from those of this case and the holding in the *Cecio* case is inapposite. There was no error in the trial court's exclusion of the question.

There is no error.

In this opinion the other judges concurred.