## DORR-OLIVER, INC. *v.* WEBSTER COMPUTER CORPORATION

APPELLATE DIVISION OF THE COURT OF COMMON PLEAS

FILE No. CV 1-711-32241

Argued June 6—decided October 24, 1972

*John P. Bigda,* of Stamford, for the appellant (plaintiff).

*Edward J. Markosky, Jr.,* of Danbury, for the appellee (defendant).

MISSAL, J. This is an appeal from a judgment rendered for the defendant arising out of an alleged contractual relationship of the parties.

The court's finding of facts may be summarized as follows: The defendant, a foreign corporation, was primarily engaged in the business of providing computer systems for large companies and was qualified to do business in the state of Connecticut. The plaintiff was also a foreign corporation qualified to do business in the state of Connecticut. The defendant also acted as computer consultants through its branch known as "executive search." As a consultant, the defendant would be called upon to develop a computer system for a company, to define its objectives, and to design the system. As a by-product, the defendant would help find people to man the computers in an operations capacity, program the computers, design the system, or manage the facility. Initially, the defendant's computer division offered to provide the plaintiff with a standard computer system. At the plaintiff's special request, the defendant procured an individual as senior systems analyst programmer with the plaintiff. The defendant then was specifically asked by the plaintiff to find an attorney to be employed by the plaintiff. The defendant procured Attorney Robert C. Roxby, who was later interviewed and hired by the plaintiff on September 3, 1969. The

plaintiff paid the defendant $3402 as a fee for procuring the employment of Robert C. Roxby. He remained in the employ of the plaintiff from September 3, 1969, until October 31, 1969, a period of about eight weeks. The defendant never collected any fee from a person for whom it secured employment. It never solicited the public at large or advertised for or concerning replacements of individuals in employment. At the time of the employment of Attorney Roxby, the defendant agreed to refund 100 percent of the fee paid by the plaintiff in the event the attorney terminated his employment within thirty days. On November 19, 1969, the defendant, by way of compromise, made an offer of settlement to the plaintiff of a 50 percent rebate of the fee paid in connection with the Roxby employment in the form' of a credit toward future placements. The offer was never accepted by the plaintiff. The defendant has never obtained a license from the commissioner of labor authorizing it to carry on an employment agency business, nor has it filed with him a fee schedule relative to commissions for procuring employment or employees. The plaintiff has demanded from the defendant the return of the $3402 fee, but the defendant has never returned any portion thereof to the plaintiff.

The plaintiff brought this action in three counts. The first count demands the return of the fee of $3402 because the defendant was not licensed to do business as an employment agency in the state of Connecticut. The second count demands the refund which is required to be paid by a licensed employment agency under § 31-131 of the General Statutes if the duration of the employment is less than ten weeks.[1] The third count, based on an alleged agree-

[1] "Sec. 31-131. FEE NOT COLLECTIBLE OR TO BE REFUNDED, WHEN. RECEIPT FOR FEE. AGREEMENTS WITH APPLICANT. . . . If an applicant obtains or accepts a situation or employment through the agency of a licensed person but does not remain in the situation or employment

ment between the parties, demands a return of one-half of the fee paid. On November 18, 1971, judgment was rendered for the defendant on all counts.

I

The question to be decided in the first count is whether the defendant was operating an employment agency under §§ 31-129 to 31-133 of the General Statutes. In § 31-129, "employment agency" is defined as including "the business of procuring or offering to procure work or employment for persons seeking employment or employees for persons seeking the services of employees or acting as agent for procuring such work or employment or supplying employees to render services where a fee or other valuable thing is exacted, charged or received for procuring or assisting to procure employment, work or a situation of any kind or for procuring or providing help for any person."

The basic question to be determined is to what extent and in what way must a "person" be engaged in the practice of "procuring . . . work . . . or help" for others in order to hold that he is in that "business" and thus must obtain a license in order legally to do his business.

An employment agency statute was first enacted in 1901; Public Acts 1901, c. 100; Rev. 1902, c. 259; but none of the subsequent amendments and changes have ever been interpreted by an appellate court. Hence, this issue is one of first impression, and we find it necessary to look to the law of sister jurisdictions for guidance on the subject.

In *Heyman* v. *Howell*, 133 N.Y.S.2d 19 (Sp. Sess.), the court was called upon to decide whether a co-

_____

for longer than ten weeks, the applicant shall then be entitled to a refund or adjustment of that part of the fee paid or owing which is greater than ten per cent of the amount he has received as remuneration for that employment. . . ."

partnership which described itself as "business engineers" or "efficiency experts" became for legal purposes an "employment agency" by virtue of the fact that "[t]hey also attempt to recruit 'executives' to fill positions in their clients' organizations." The New York court held that the copartnership was not an employment agency and thus did not need a license to carry on its activities. The court relied on four major factors: (1) No fee was paid by the new employee, directly or indirectly. (2) The main business of the copartnership was efficiency advice, and securing employees was only incidental. (3) The defendant did not advertise or solicit the public at large. (4) The primary purpose of the statute in question was to regulate employment agencies for the protection of the applicant for work against many possible abuses.

In *National Staffing Consultants, Inc.* v. *District of Columbia,* 211 A.2d 762 (D.C. App.), the appellant corporation was engaged in the practice of charging a client a fee in exchange for bringing him together with prospective employers at "career centers." The District of Columbia Code § 47-2101 (a) (1961) is similar to the Connecticut statute and defines "private employment agency" as "any business, enterprise, or undertaking that procures, offers to procure, . . . attempts to procure, or aids in procuring, either directly or indirectly, help or employment for another, for any fee, remuneration, profit, or any consideration whatsoever." The court held that the corporation was not an employment agency within the meaning of the District of Columbia Code, citing *Heyman* v. *Howell,* supra. The court decided that the corporation was not an employment agency as it was "engaged principally in activities of management consulting and executive recruiting." The employer was charged a fee for services, not the employee, and the corporation did

not advertise or solicit the public at large. The court held that the "primary objective of Congress was to furnish by careful supervision and regulation protection of *individual* applicants seeking employment through unscrupulous private agencies from many possible abuses in that area."

Another case, arising under Minnesota law and favorably citing *Heyman* v. *Howell,* supra, and *National Staffing Consultants, Inc.* v. *District of Columbia,* supra, is *Telex Corporation* v. *Balch,* 382 F.2d 211. Balch had been working for Telex as a management consultant. In the course of his services, he procured for Telex an individual to serve as its general manager. Telex was sued by Balch when it refused to pay Balch a fee on the ground that Balch was operating as an employment agency without a license. The United States District Court ruled in Balch's favor and was upheld unanimously by the United States Court of Appeals for the Eighth Circuit.

The relevant Minnesota statute defines an employment agency as "any person, firm, corporation or association . . . engaged for hire or compensation in the business of furnishing persons seeking employment or changing employment, with information or other service . . . or furnishing any other person, firm, corporation, or association who may be seeking to employ or may be in the market for help of any kind, with information enabling . . . [it] to procure such help." Minn. Stat. Ann. § 184.01, subd. 2 (1966).

In deciding that Balch was not operating an employment agency, the court relied on these factors: (1) The finding of the trial court that Balch was not "in the business" of an employment agency was not disturbed since Balch was basically a management consultant and only occasionally recruited ex-

ecutive personnel. (2) The statute in question was designed to protect individual applicants from fraudulent and incompetent practices and not from transactions such as that between Balch and Telex.

In the case before us, the plaintiff's fourteen assignments of error relate either to the trial court's failure to find certain facts as set forth in paragraphs appearing in the plaintiff's draft finding or to correcting, striking or adding to the court's findings. The plaintiff has filed with this court a certified copy of the entire transcript of the court hearing. The assignments of error may be reduced to the single question of whether the conclusion of the court, based on the subordinate facts found, may be legally or logically drawn from those facts. See *Automobile Ins. Co.* v. *Conlon,* 153 Conn. 415, 420.

A finding is to be favorably construed in support of the judgment; *Cunningham Lumber Co.* v. *Mayo,* 75 Conn. 335, 337; and every reasonable presumption is to be made in support of the finding. *C. and C. Electric Motor Co.* v. *D. Frisbie & Co.,* 66 Conn. 67, 78. An examination of the transcript reveals that the findings sought to be stricken can be reasonably supported in the evidence. The question of credibility is for the trier. *Shakro* v. *Haddad,* 149 Conn. 160, 162. The trial court is not required to add to the finding facts which are not material to the issues in the case. *Charter Oak Estates, Inc.* v. *Kearney,* 160 Conn. 522, 525.

The trial court has found the following controlling facts which will not be disturbed. (1) No fee was paid to the defendant by the employee. (2) The defendant did not solicit the public at large for business. (3) The procuring of an employee is incidental to the main service provided to the client. (4) The policy behind §§ 31-129 to 31-133 of the

General Statutes is the protection of individual applicants—those seeking employment—from unscrupulous employment agencies. *Carr Associates, Inc.* v. *Gant Shirtmaker,* 29 Conn. Sup. 490.

From the rationale of *Heyman* v. *Howell,* supra, *National Staffing Consultants, Inc.* v. *District of Columbia,* supra, and *Telex Corporation* v. *Balch,* supra, and the finding of the trial court, it is clear that the definition of an "employment agency" in § 31-129 of the General Statutes does not apply to the defendant, and therefore it was not necessary for the defendant to obtain an employment agency license under § 31-130.

The judgment for the defendant on the first count will not be disturbed.

## II

Having decided that the defendant was not an "employment agency" as defined in § 31-129 of the General Statutes, this court must conclude that it was not necessary, as claimed in the second count, for the defendant to refund, pursuant to § 31-131, part of the fee paid by the plaintiff.

## III

The third count alleges that there was an agreement entered into on December 3, 1969, between the plaintiff and Thomas Sweeney, an employee and managing agent of the defendant, in which the defendant agreed to return one-half of the fee paid by the plaintiff, or $1701, in the form of credit against future placements for the next six months, but if no placements were made during the six-month period, the refund would be in cash. The plaintiff further alleges that no placements were made during the six-month period and that although the plaintiff made demand for the return of $1701, the defendant refused to make the payment.

The plaintiff hired Attorney Roxby on September 3, 1969. The plaintiff paid the $3402 to the defendant as a fee, and subsequently, on October 31, 1969, Roxby left the employ of the plaintiff.

The plaintiff introduced a letter from the defendant dated November 19, 1969, in which the defendant, by way of compromise, made an offer of settlement to the plaintiff of a 50 percent rebate of the fee paid by the plaintiff in connection with the employment of Roxby in the form of a credit toward future placements. The plaintiff claims to have accepted this offer orally.

It is elementary that to create a contract there must be an unequivocal acceptance of an offer. In the case of a bilateral contract, the acceptance of the offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. *W. G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 288. The acceptance of the offer must, however, be explicit, full and unconditional. *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 487. And the burden rested on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract. *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 246.

Here, the trial court found that the letter, dated after the contract was fully executed by the parties, was merely an offer of agreement unsupported by consideration. The court further found that the offer of compromise was never accepted by the plaintiff.

For the reasons set forth, we must uphold the finding of the trial court.

There is no error.

In this opinion MIGNONE and O'BRIEN, Js., concurred.