[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 31, 1988, the plaintiff, Terry Buckwalter, a contractor, filed a two count complaint which alleged that the defendant homeowners, Ralph David Mannella and Elizabeth Tolles Mannella, had breached a contract for the construction of a new home. The first count of the complaint sounded in contract and the second count alleged unjust enrichment to the defendants. On September 6, 1988, the defendants filed their answer and a counterclaim which alleged that the work had been performed in a defective and unworkmanlike manner. Subsequent to the commencement of trial the plaintiff filed an amended two count complaint, based on the same theories, on April 30, 1990. The case was tried to the court on April 9, April 18, May 9, and May 10, 1990. Thereafter, the CT Page 1931 parties submitted briefs.
Facts
On November 7, 1987, the plaintiff contractor and defendant homeowners entered into a written contract for the construction of a new residence for the defendants in Middlebury, Connecticut. The contract provided:
 LORD AND LION HOMES — Terry Buckwalter — does hereby enter into contract to build the new residence of Ralph D. Mannella at Tranquillity Road, Middlebury, Ct. LORD AND LION HOMES — will furnish necessary insurance and Labor to install and perform all work according to the plans of the General Contractor as outlined in contract: 1. complete framing 2. build chimney 3. complete exterior trim including jam and trim for garage door 4. install tyvek 5. install windows 6. install exterior door units 7. install subfloors 8. build and install substairs and platforms 9. install lally columns 10. complete siding 11. complete finish roofing
The total contract price for the above work was $18,750.00. The contract, which was signed by the plaintiff contractor and the defendant, R. David Mannella, did not specify a completion date.
The written contract provided that the plaintiff agreed that all work was to be performed under the approval of the general contractor, Ralph A. Mannella, the father of the first named defendant. The contract also provided that it would be the right of the general contractor to specify construction details. Additionally, the contract provided: "In compliance with the General Contractor's direction and construction details Terry Buckwalter will receive an additional $1,000.00 Bonus when the terms of this contract are completed."
The general contractor's plans specify that one-half by eight inch cedar siding was to be installed on the new residence. According to the plaintiff contractor, one-half by six inch siding is generally used because the wider siding CT Page 1932 can lead to problems including "cupping". According to the plaintiff, a larger shingle has a tendency to warp and cup because of the greater exposure to the elements. However, the plaintiff installed the shingles according to the specifications of the general contractor. It took the plaintiff contractor approximately five to six weeks to install the cedar siding over Tyvek. According to the contractor, he received no complaints whatsoever from either the defendants or the general contractor concerning the installation of the siding.
During the course of construction, the plaintiff contractor did certain additional work ("extras") which had not been provided for in the written contract. The extras included the removal of concrete which had been improperly poured by the concrete contractors and the installation of a garage ceiling. The plaintiff's total charge for all extras was $3,665.00.
Under the terms of the original contract, which was for labor only, the plaintiff contractor was to be paid a total of $18,750.00. The contract provided that the defendant would pay the plaintiff a daily rate of $100.00 per man and $300.00 per day for work completed, payable each Friday. The plaintiff contractor commenced work on November 17, 1987 and completed his work sometime in April, 1988. Pursuant to the terms of the contract, during the course of his work, the plaintiff contractor had been paid $15,800.00 by the defendants. Including the extras, the total contract price was $21,995.00 and as of the completion date, there was a balance due of $7,615.00.
The plaintiff submitted a bill to the defendants at their residence after completion of his work. The defendants agreed to pay all but the bonus clause of $1,000.00. The bonus clause had provided that the plaintiff's work was to be performed "in compliance with the General Contractor's direction and construction details". Because he believed that he had complied with all provisions under the contract including the general contractor provision and because the defendants would not enumerate reasons that he had not, the plaintiff refused the proffered payment. The plaintiff contractor first learned of complaints concerning the quality of his work through his attorney in this matter.
The general contractor, who is the father of the first named defendant, testified that he is retired but had been a general contractor and building manager for a number of years. The general contractor did have experience building smaller homes. The general contractor testified that he CT Page 1933 lived one hour away from the job site and that he visited the same approximately once every week or two weeks, and that he never visited the job site during the actual construction. The general contractor ordered the siding for the residence, but it wasn't his choice, he would have preferred vinyl or the smaller six inch cedar shingles.
The defendant, Ralph D. Mannella, testified that the plaintiff did do extra work on his residence, that he (the defendant) was never told prices for any of this work and that he had therefore assumed that there would be no charge for the extra work. The defendant had made this assumption because of his having helped the plaintiff with some work on the residence during the course of the construction, for example, the installation of Tyvek. The defendant had chosen the one by eight cedar siding because he liked the looks of the wider board. The defendant did recall the plaintiff's approach to him in April, 1988, concerning the remainder of the bill and his (the defendant's) refusal to pay the $1,000.00 bonus.
At trial, the defendants called two experts concerning the quality of the plaintiff's workmanship on their residence. According to the defendants' experts, it is normal for a certain amount of clapboard to crack during the first year after installation. However, the defendants' experts stated that here there has been excessive cracking due to the nailing by the plaintiff contractor. However, in this regard, the Court fully credits the testimony of the plaintiff that the nailing and exposure had been determined by the general contractor and the defendants.
There was also considerable disagreement over whose responsibility it was to sort lumber which had been delivered to the job site. In the present case, the plaintiff contractor had been required to stop his work and sort lumber which had been delivered to the site. The plaintiff's expert's testimony, which is credited by the Court, was that it was the responsibility of the general contractor to provide for such sorting and that if craftsmen at the site were required to sort he would consider this an extra charge.
According to the plaintiff's expert, Russell Choate, a mechanical engineer and general contractor who has built over 20 homes, the prices charged in the present case by the plaintiff contractor for the "extras" were on the low side. Mr. Choate testified that cracking may be caused by wood predisposed to cracking and by the quality of the wood utilized. Mr. Choate believed that the wood utilized on the defendants' residence was predisposed to cracking which CT Page 1934 accounted for the cracking which did occur.
When called upon to inspect the defendants' residence, Mr. Choate thought he was at the wrong house, since there were no defects whatsoever discernible from the street. While Mr. Choate testified that he had never seen a perfect house, he believed that the plaintiff had done a very good job on the defendants' residence.
I. Legal Discussion
The plaintiff's amended complaint alleges a breach of the November 7, 1987 contract between himself and the defendants under which the parties agreed that the plaintiff would build a new residence for the defendants. In count one the plaintiff seeks to recover the remainder of the contract price together with the bonus of $1,000.00, that is, $3,950.00.
Under Connecticut law, a party generally cannot recover on a contract unless he has fully performed his own obligations under the contract. Automobile Ins. Co. v. Model Family Laundries, Inc., 133 Conn. 433 (1947). Where a party furnishes services under a contract at the request of another and with the expectation of being paid for his services, he is entitled to payment in accordance with the terms of the contract. Charter Oak Estates, Inc. v. Kearney,160 Conn. 522, 531-32 (1971). Where a party has fully performed his obligations under a contract, he is entitled to recover. First Hartford Realty Corporation v. Ellis,181 Conn. 25, 37 (1980).
In the present case, the Court finds by a preponderance of the evidence that the plaintiff contractor fully performed his obligations under the contract and therefore is entitled to payment of the remainder of the contract price.
The Court also finds that the plaintiff contractor is entitled to recover on the $1,000.00 so-called bonus clause. A construction contract may validly require that the work be completed in a manner satisfactory to the owner or a third party. Honest dissatisfaction on the part of the owner is enough to prevent recovery. Dubose v. Carabetta, 161 Conn. 254
(1971). The Court is hard pressed to find honest dissatisfaction on the part of the defendant owners in the present case, given the fact that no dissatisfaction either on the part of the owners or on the part of the general contractor was voiced to the plaintiff until the job was completely finished. Additionally, the bonus clause is subject to the substantial performance doctrine. Connecticut CT Page 1935 recognizes the doctrine of substantial performance under which a contractor who has substantially performed a construction contract is entitled to recover the full amount of the contract price, less the cost of completing the contract. Commercial Discount Co. v. Plainfield, 120 Conn. 274,278 (1935). The test for substantial performance is whether the contractor has performed the essential requirements of the contract so that the owner can use the structure for its intended purpose. Kelley v. Hance,108 Conn. 186, 188 (1928). Here, the plaintiff contractor fully performed the terms of the contract according to the direction and specification of the general contractor. The plaintiff contractor is entitled to recover the $1,000.00 provided for in the bonus clause of the contract.
As to count one of the complaint, the Court finds that the plaintiff has sustained his burden of proof and is entitled to recover on the contract the amount of $3,950.00 from the defendant.
The second count of the plaintiff's amended complaint seeks recovery from the defendant for additional work performed under the theory of unjust enrichment. In order to recover under the doctrine of unjust enrichment, it must be shown that the recipient of the claimed benefit was in fact benefited, that the benefit was unjust in that it was not paid for by the recipient, and that the failure of payment operated to the detriment of the claimant. Monarch Accounting Supplies, Inc. v. Prezioso, 170 Conn. 659, 665-66
(1976); Burns v. Koellmer, 11 Conn. App. 375, 383 (1987). The right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. Providence Electric Co. v. Sutton Place, Inc.,161 Conn. 242, 246 (1971). Unjust enrichment is a form of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. Burns v. Koellmer, supra at 385.
In the present case the plaintiff contractor was requested by the general contractor and/or the defendants to perform additional work which was not encompassed in the original November 7, 1987 contract. The plaintiff contractor performed labor and provided services not customarily provided by framers or roofers in order to carry out their functions, such as the stacking of broken bundles of lumber, the unloading of siding materials, sending his employees to the store for materials which should have been provided by CT Page 1936 the defendants, providing a generator for electrical power when none had been supplied by the defendants, and the removal of concrete which had been improperly poured by another contractor. The additional work performed by the plaintiff contractor was listed in two exhibits introduced at trial, Plaintiff's Exhibits G and H. The total cost for services listed in Exhibit G was $2,245.00; and the cost for items listed in Exhibit H was $1,420.00, for a total of $3,665.00.
This Court finds that the plaintiff contractor has sustained his burden of proof by a preponderance of the evidence on count two of his complaint, seeking recovery from the defendant on a theory of unjust enrichment. The plaintiff performed these services, not covered by the original contract and the defendants reaped the benefits. Equity dictates that the plaintiff contractor be compensated for his labor and services.
Accordingly, the Court awards damages in the amount of $3,665.00 to the plaintiff contractor on count two of the complaint.
 II.
In their January 25, 1989 amended answer and counterclaim the defendants have alleged that the plaintiff performed his work in a defective and unworkmanlike manner in that: (a) the clapboard was nailed improperly; (b) the clapboard was cracked, warped and defective caused by improper nailing and workmanship; (c) the clapboard was improperly spaced leaving gaps in the exterior siding. The defendants allege that they will incur damages in additional costs to remove, replace and repair the siding negligently and defectively installed by the plaintiff.
The defendants have the burden of proof on their counterclaim and must establish it by a fair preponderance of the evidence. When the plaintiff contractor undertook the construction of the defendants' residence, he was under duty to exercise that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions. Scribner v. O'Brien, 169 Conn. 389, 400
(1975); Coburn v. Lenox Homes, Inc., 186 Conn. 370, 381
(1982). The defendant homeowners must establish that the negligence of the contractor was a substantial factor in causing whatever damages were sustained. Johnson v. Flammia,169 Conn. 491, 498 (1975). Where the builder has substantially performed the contract, the owner is entitled to a deduction for the cost of correcting any defective work CT Page 1937 on the part of the builder. Bruni v. Behnke, 144 Conn. 182,183 (1956). Negligence is not a complete defense to a claim, but only a reduction of it. In the present case, no negligence has been proven so the defendant homeowners are entitled to no deduction for claimed defective work.
The defendants' two expert witnesses, Mr. Lance Oliveri and Mr. Joseph Hewes, the general contractor, and the plaintiff's expert witness, Mr. Russell Choate, agreed that the one-half by eight inch shingle utilized here is not the most commonly chosen size of siding due to its propensity to cup and/or crack and its relative weakness compared to the more common one-half by six inch shingle. The experts and general contractor also agreed that there were many possible causes of cupping and cracking of the one-half by eight inch red cedar shingle, including by not limited to exposure to the elements, width of the shingle in question, the grade of wood used, and the type of nailing procedure utilized during installation.
The Court accepts the testimony of the plaintiff's expert that the installation of the siding in the instant case was performed in a workmanlike manner, that any variances between courses at the corners of the residence were normal, and that the installation of the siding had been done in an aesthetically pleasing manner. The Court has considered the numerous photographs introduced into evidence by the parties in this regard.
The defendants have failed to sustain their burden of proof on their counterclaim that the work performed by the plaintiff contractor was done in a defective and unworkmanlike manner. Accordingly, judgment on the defendants' counterclaim may enter in favor of the plaintiff.
III. Conclusion
Based on the foregoing, on the amended complaint judgment may enter on the first count for the plaintiff in the amount of $3,950.00, and on the second count judgment may enter for the plaintiff in the amount of $3,665.00, for a total judgment in the amount of $7,615.00. On the defendants' counterclaim judgment may enter for the plaintiff.
So ordered.
Hartmere, J. CT Page 1938