[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is brought by a licensed architect to recover for services rendered to the defendant homeowners pursuant to an oral contract. In addition to the allegation of breach of contract, the plaintiff seeks in his second count damages based upon the theory of quantum meruit.
The defendants deny the existence of a contract and set up several defenses alleging accord and satisfaction, a violation of the Home Sales Solicitation Act (HSSA), a violation of the American Institute of Architects (AIS) guidelines, that the plaintiff acted in bad faith and in an unconscionable and commercially unreasonable manner, that he breached his professional and fiduciary duty to the defendants, is estopped from claiming relief, and that the reasonable value of the services is not that claimed by the plaintiff.
The court finds the following facts. The plaintiff is an architect licensed by the State of Connecticut to practice his profession for some twenty years. In a phone call from an attorney, the plaintiff was asked to call the defendants about prospective work. The plaintiff did so and a meeting was set up at the defendants' home at 131 Meadow Road in Riverside, Connecticut. At this initial meeting both defendants were present, but at times during the two hour meeting, the plaintiff remained alone with the defendant, Mr. Romaine. The concern of the defendants was whether the existing dwelling was salvageable or a new house should be constructed. The parties discussed the defendants' interest in a new library, front entrance, the kitchen, family room, master bedroom, and a possible office. The plaintiff testified that he also discussed at a later date with Mr. Romaine a bowling alley and indoor swimming pool. It was not claimed that both defendants were present when all of said items were discussed. The plaintiff told the defendants that his fee for his work was $50 per hour for his own time, and $35 per hour for his assistant, plus expenses. The defendants authorized the plaintiff to commence preparing schematic concept drawing designs for the renovation of their house. The plaintiff asked for and received a box of drawings purportedly of the existing structure, which the plaintiff reviewed and found inaccurate.
The plaintiff felt that the dwelling was worth saving, and for the next three and half months prepared various concept drawings for the defendants. He took photos of the house and made measurements. Within a few weeks after the initial meeting, he met again with the defendants and submitted design drawings. He CT Page 3295 presented drawings which "flipped" the layout of the house, and although Mr. Romaine liked it, Mrs. Romaine did not and it was rejected.
The plaintiff continued to work on schematic drawings which showed such things as expanding the master bedroom, the library, a new family room, and a new garage. The parties met one or two times after the second meeting and at which drawings were shown but none were ever finalized.
The plaintiff testified that he began to submit bills to the defendants by mailing a statement dated October 1, 1994 for the work performed up to that date. This statement was in the amount of $5,200.73. On November 1, 1994 he submitted a bill of $3,554.10, on December 1, 1994 $2,428.49 and on January 1, 1995 $1,972.34. The plaintiff's testimony was that these bills were mailed to the defendants within a week after the first of each month.
There was conflicting testimony as to the receipt of these statements. While the plaintiff claims he issued each of the bills promptly after their respective dates, the defendants testified that they did not receive them until they were sent to them as a package after December 13, 1994. The defendant Mr. Romaine testified there was a period during which he did not open his mail because he was out of town on business involving his mother's estate. He also said he reviewed all his mail. The plaintiff testified that Mr. Romaine told him that he had opened only one bill and that it seemed reasonable. According to the plaintiff, Mr. Romaine also asked for time to pay the bill, and that he had not realized how much had accumulated.
On December 13, 1994, the plaintiff was called to the defendants' house after asking several times for money.[1] They delivered him a check in the amount of $2,800 and instructed him to do no more work.
For their part, the defendants testified that they never entered into a contract with the plaintiff. Mrs. Romaine stated that she was not aware that the plaintiff was charging them for the schematic drawings, that they never agreed to his fee of $50 an hour, that they did not know how much time he was spending on the drawings, and they expected that all of the plaintiff's work was free until he was discharged on December 13, 1994.[2] She also testified that she never saw the plaintiff's invoices until CT Page 3296 they came in the mail in one package after December 13, 1994. She did not know whether her husband had received the bills.
Mr. Romaine testified about the first meeting with the plaintiff, wherein the defendant asked the plaintiff about his rates and was told. He also said he did not see the plaintiff's invoices except as one package after December 13, 1994. Mr. Romaine said that the plaintiff had told him he was in hard financial straits, he needed money, and was out of pocket $2,800. The defendant said he agreed to pay him $2,800, but did not believe he owed it.
The first issue for the court is whether or not there was a contract between the parties. Whether a contract exists is a question of fact for the court to determine. RandolphConstruction Co. v. Kings East Corporation, 165 Conn. 269, 277,334 A.2d 464 (1973). An implied contract arises if the plaintiff renders services, at the request of the defendant, under an expectation that they were to be paid for and if the defendant either intended to pay for them or the services were rendered under such circumstances that the defendant knew or, as a reasonable person should have known, that the plaintiff did expect payment. Butler v. Solomon, 127 Conn. 613, 615,18 A.2d 685 (1941). Ordinarily when one is requested to render services in the usual course of that person's business or profession, an inference exists that the party requesting such services intends to pay for it. DeSalvo, Jenson v. Bozzutto's Carting Co., Superior Court, judicial district of New Haven at New Haven, Docket No. CV90-0307495 S (July 28, 1995, Barnett, J.).
The plaintiff arrived at the defendants' house at the instigation of a friend of the defendants, and a discussion was had with respect to the preparation by the plaintiff of schematic drawings for renovations to be done in the defendants' home. The defendants inquired of the plaintiff as to his rate of compensation and were told $50 per hour for his own work and $35 per hour for the time of his assistant. The defendants authorized him to proceed. The defendants' contention is that they believed that the $50 per hour fee would only begin after the schematic design drawing stage was completed. Until then, they expected no charge for plaintiff's work, although there was no understanding that the plaintiff would be the architect of record should the project go ahead. The defendants held their view that they had a no charge arrangement with the plaintiff based on prior experience they had had with other architects both with the CT Page 3297 present residence and a prior one.[3] The court finds these prior engagements have no relevancy to this case. The plaintiff quoted a fee for his proposed services and was authorized to go forward. There are no facts to show that the defendants were reasonable in believing that the plaintiff did not expect to be paid for these services. In fact, under the circumstances presented, if the defendants were not clear that the plaintiff was to be paid for what he was to do, they had an obligation to inquire. If they thought, based on their prior experience, that the plaintiff would not charge them, it was unreasonable for them not to clarify the plaintiff's fee structure before he began working. The defendants did not tell the plaintiff about their previous relationships with architects, and it is not to be expected that the plaintiff should have known what they were thinking when they asked him to proceed with his work after having been quoted his fees. Under the circumstances here, the defendants at the very least should have known, as reasonable persons, that the plaintiff expected payments for the schematic drawings. SeeButler v. Solomon, supra, 127 Conn. 615.
In furtherance of the contract, the plaintiff continued to work on drawings; he took photos and measurements and prepared new "as-builts" since those supplied him were inaccurate, and he met with the defendants on several occasions. Most significantly, the plaintiff mailed invoices to the defendants showing the charges for work done. Invoices were sent on or about the first of October, November, and December, 1994. The amounts billed were not inconsequential and would have attracted the attention of anyone who believed she or he was not being charged for the services provided. The defendants never told the plaintiff to cease work, but allowed him to continue with the drawings. This conduct of the defendants lends credence to the conclusion that they indeed knew that the plaintiff expected payment. The conduct of the parties regarding the terms of the contract is a useful and proper aid to its interpretation. Crowther v. Gerber GarmentTechnology, Inc., 8 Conn. App. 254, 263, 513 A.2d 144 (1986);Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397, 407-408,365 A.2d 1086 (1976).
The defendants claim that they never saw the invoices until after they discharged the plaintiff and he sent them all the statements together for the first time. There is evidence, though, that the defendant Mr. Romaine opened at least one bill and found it reasonable, and that he asked the plaintiff for time to pay it. In the solution of an issue of fact, the credibility CT Page 3298 to be accorded testimony of the persons involved is controlling. See Randolph Construction Co. v. Kings East Corporation, supra,165 Conn. 277. The court credits the testimony of the plaintiff and finds that the invoices for his work were sent at or about the time of their respective dates and were received and seen at least by the defendant, Mr. Romaine.
The court finds that a contract for the plaintiff's services was entered into because the plaintiff rendered services at the request of the defendants under an expectation that they were to be paid for, and that the defendants either intended to pay for, or as reasonable persons, should have known that the plaintiff expected payment, Butler v. Solomon, supra, 127 Conn. 615. The determination of intent to pay for the services is always a question of fact for the trial court under all the circumstances of the case. Charter Oak States, Inc. v. Kearney, 160 Conn. 522,532, 280 A.2d 885 (1971). The court also finds that the plaintiff performed work at the agreed rates amounting to $13,156.16.
However, this does not end the court's inquiry because the defendants have raised several special defenses, nine in number. They allege a violation of the Home Sales Solicitation Act (HSSA) and contend that even if the parties created a contract, that contract is unenforceable because it violates the act since it was not in writing. C.G.S. § 42-135a. This issue was the subject of the defendants' motion for summary judgment which was denied on August 16, 1996 by this court (Lewis, J.). The denial was based in part upon the fact that the Home Improvement Act (HIA), which specifically refers to the HSSA, exempts licensed professionals from these provisions. C.G.S. § 20-428, 20-429
(e). The court not only declares this ruling to be the law of the case[4], but adopts its reasoning as its own. The plaintiff in this case, being an architect licensed by the State of Connecticut, is exempt from the provisions of the HSSA.
The defendants next claim accord and satisfaction as a defense to the plaintiff's claim. On December 13, 1994 the plaintiff asked for payment of $2,800 which the defendants contend was paid in full satisfaction of his claim. However, the defendants, having the burden on their special defense, have failed to prove that it was tendered in full satisfaction. There was no conspicuous statement either on the check or otherwise in writing, that it was tendered in full satisfaction of the claim. C.G.S. § 42a-3-311. The defendants' defense of accord and satisfaction must fail. CT Page 3299
The defendants further claim that the plaintiff did not comply with the American Institute of Architects guidelines in forming the contract. However, they point to no authority which the court could adopt to vitiate the plaintiff's agreement on that basis.
Finally, the defendants have alleged that the plaintiff acted in bad faith and in an unconscionable and commercially unreasonable manner, that he breached professional and fiduciary duties to the defendants and is estopped from claiming relief. In a word, the defendants have failed to present any evidence from which the court could sustain such allegations.
Likewise, there is no merit to the defendants' counterclaims.
The court finds in favor of the plaintiff on the complaint and renders judgment on the amount of $10,356.16 plus costs, and in favor of the plaintiff on the counterclaim.
So Ordered.
D'ANDREA, J.