LAR-ROB BUS CORPORATION v. TOWN OF FAIRFIELD ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 6, 1975—decision released March 23, 1976

*Noel R. Newman,* town attorney, for the defendants (appellants).

*Leslie Byelas,* with whom was *Andre L. Nagy,* for the plaintiff (appellee).

Longo, J.   The plaintiff, Lar-Rob Bus Corporation, brought this action in two counts against the defendants, the town of Fairfield and its board of education, claiming damages resulting from the breach of a contract for the transportation of school children.   The defendants have appealed from the judgment of the trial court awarding damages to the plaintiff under the first and second counts of the complaint, and from the judgment against the plaintiff awarding nominal damages to the defendants on their counterclaim.

The defendants' extensive assignment of errors includes claims that certain facts were admitted or undisputed and should have been added to the finding. Some of these claims have not been briefed and are therefore considered to have been abandoned. *State* v. *Marsh,* 168 Conn. 520, 521, 362 A.2d 523. The remaining requested additions cannot be included because they are not material or undisputed facts. Practice Book § 628 (a); *Charter Oak Estates, Inc.* v. *Kearney,* 160 Conn. 522, 525, 280 A.2d 885. The defendants also assign as error the finding of facts without evidence. Because the plaintiff has not included in its brief an appendix showing evidence on which the finding of these facts can be based, and such evidence does not appear in the defendants' appendix, these paragraphs must be stricken from the finding. *White Oak Excavators, Inc.* v. *Board of Tax Review,* 169 Conn. 253, 256, 363 A.2d 134. The deletion of these paragraphs does not affect the character or the disposition of the issues on appeal. The defendants have requested that other paragraphs of the finding be deleted because they are in language of doubtful meaning so that their real significance may not clearly appear. As stated in Practice Book § 628 (b), "[s]uch correction will rarely be made"; and it is not required here. Correction of the finding of fact, insofar as it is required, is discussed in the opinion, as are any necessary corrections relating to the court's conclusions and the judgment rendered thereon.

I

The plaintiff has been transporting school children under contract with the defendants since 1962. In 1970, the plaintiff submitted a bid for a new five-year contract which was higher than other bids.

Nevertheless, because of past favorable experience with the plaintiff, the defendants began extensive negotiations with representatives of the plaintiff. On February 27, 1971, the parties entered into a five-year contract. By its terms, there were to be thirty-five school bus routes, using one bus per route. Originally, the defendants had required that a new bus be purchased for use on each of the thirty-five routes. During the negotiations, however, it was agreed that the plaintiff would be required to purchase only thirty new buses and would use five older ones for several years. The contract specifically provided that "[f]or the school years commencing September 1, 1971, September 1, 1972, and September 1, 1973, the Contractor [the plaintiff] may use five 1968 60-passenger vehicles on regular routes, but these must be replaced with 66-passenger bus units when they reach the age of five years." The final negotiated price was based on reduced costs for the plaintiff, resulting from the agreement between the parties that the plaintiff would use five 1968 model buses and would be required to purchase only thirty new ones. In 1972, as a result of a reduced school budget, the defendants reduced the number of school bus routes from thirty-five to thirty, eliminating the need for five buses. By letter dated July 26, 1972, the defendants specified that the plaintiff was to sell the five 1968 model buses. The plaintiff claimed it should be allowed to keep the older buses and to sell five of the thirty new buses which had been purchased the previous year. By mutual agreement, the older buses were sold without prejudice to the rights of the parties.

In count one of its complaint, the plaintiff claimed that the defendants had breached the contract between the parties by requiring the five 1968

model buses to be sold, which the plaintiff claims it was permitted by the terms of the contract to use through 1973. The trial court found that the contract had been negotiated upon the basis that the plaintiff would use five older buses for the years specified. The court properly concluded that the plaintiff had a contractual right to use those buses. The terms of the contract on that point are complete and unambiguous. A contract will be enforced according to the natural and ordinary meaning of the language used. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.*, 130 Conn. 12, 16, 31 A.2d 393. By requiring that the older buses be sold, the defendants breached the contract between the parties.

The defendants raised a special defense to count one of the plaintiff's complaint. Their special defense related to a second provision of the contract between the parties. All of the terms contained in that provision are relevant to this opinion. It provides: "In the event that, during the school years commencing September 1, 1971, September 1, 1972, and September 1, 1973, more than thirty (30) bus units but less than thirty-five (35) of said bus units are utilized on a regular basis, the Town shall reimburse the Contractor for any actual dollar loss sustained by the Contractor resulting from the sale of any of said bus units by which the number thirty-five (35) exceeds the amount of bus units being used on a regular basis. The dollar loss shall consist of the difference between the sale price of any of the said bus units and the Contractor's equity including finance charges. The Town may choose which units are to be sold and may have the right to assist in selecting the highest bidder in the event of a sale." This provision does not apply here.

Under the terms of the contract between the parties, the plaintiff was never required to utilize "more than thirty (30) bus units but less than thirty-five (35)." With the 1972 reduction in the number of routes from thirty-five to thirty, the number of buses utilized on a regular basis dropped to thirty. Therefore, this provision and the terms therein did not become effective.

The calculation of the number of buses utilized on a regular basis does not include eight buses which were used to transport private school students. The trial court found that the plaintiff transported those students in accordance with a letter sent by the defendants to the plaintiff and conversations between representatives of the parties. The court properly held that this subsequent agreement did not modify the terms of the original contract existing between the parties. The defendants, as the parties alleging that there was a modification, bear the burden of proof as to that issue. 17A C.J.S., Contracts, § 588. The letter,[1] which the defendants introduced into evidence, is not unequivocal proof that a modification of the original contract was intended. For a valid modification, there must be mutual assent to the meaning and conditions of the modification and the parties "must assent to the same thing in the same sense [citations omitted] if they are to vary the contract in any way." *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 347, 225 A.2d 797. The meaning to be given subsequent agreements, therefore, depends upon the intention

---

[1] The contents of that letter are as follows: "Pursuant to our recent conversation, please add 8 buses for the transportation of pupils to private schools as recently legislated. These units are to be added under the same conditions of an Agreement for the transportation of public school students."

of the parties. As intention is an inference of fact, "the conclusion is not reviewable unless it was one which the trier could not reasonably make." *Finlay* v. *Swirsky*, 98 Conn. 666, 671, 120 A. 561, cited in *Hess* v. *Dumouchel Paper Co.*, supra, 349. The defendants do not seek to add to the court's finding evidentiary facts which are relevant to the court's conclusion that the subsequent agreement to transport private school students did not constitute a modification of the original contract. On the record, the court could reasonably and logically have found that there was no modification to include in the original contract the eight buses used to transport private school students.

The defendants claim that, by a term in the contract, they were to choose which buses would be sold by the plaintiff. That term is one of those contained in the provision discussed above, however, and was only to apply in the event that the number of buses needed was less than thirty-five but more than thirty. Therefore, there is no conflict between that term and the provision permitting the plaintiff to use 1968 model buses through 1973. The defendants did breach the contract by requiring that the older buses be sold, as the trial court properly concluded.

In its more specific statement, the plaintiff made a claim for damages resulting from the forced sale of the 1968 model buses. The plaintiff requested damages based on the amount by which its bid had been reduced, and by which its costs had been reduced, in consideration of the provision allowing the use of five older buses rather than requiring the purchase of five new ones. The trial court, finding for the plaintiff on the first count, computed

damages using a different formula. Having concluded that the plaintiff should have been permitted to sell five of the new buses, the court calculated the loss to the plaintiff which would have resulted from the sale of new buses and awarded damages in that amount.

As the finding does not reveal the source of the formula applied by the court, we turn to the memorandum of decision. *Ruggles* v. *Town Plan & Zoning Commission,* 154 Conn. 711, 712, 226 A.2d 108. The following appears in that memorandum: "The court is unable to follow the basis on which the plaintiff has calculated its damages for the breach of contract regarding the sale of the buses. The court finds that the value of each new bus at the time the defendants ordered the sale to be $10,720.00 and that the buses at said time had a market value of $7,000.00. This would result in a loss of $3,720.00 for each bus, for which the defendants were obliged to reimburse the plaintiff under the terms of the contract. It, therefore, appears that the amount of damages in regard to this count should be five times $3,720.00, or $18,600.00."

The defendants had no obligation to "reimburse the plaintiff under the terms of the contract." That obligation would arise only if the plaintiff were to sustain a loss from the sale of buses in the event that the number of buses regularly used was reduced to more than thirty, but less than thirty-five. The court erred in its calculation of damages. The damages to which the plaintiff is entitled, and for which the defendants are liable, are those which the plaintiff can prove resulted from the defendants' breach of contract by requiring that the plaintiff sell the 1968 model buses. In an action for breach of con-

tract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 272, 320 A.2d 811; *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477. In this case, damages should be awarded in the amount by which the costs of using five of the new buses during the school years of 1972 and 1973 exceed the costs which the plaintiff would have incurred had it continued to use five older buses through the school year of 1973, as the terms of the contract provided. The calculation of the difference in the cost of using the new rather than older buses includes, but is not limited to, any difference in day-to-day operating expenses, maintenance expenses, and finance charges.

## II

We next consider the defendants' claim that the trial court erred in finding for and awarding damages to the plaintiff under the second count of its complaint. In that count, the plaintiff claimed additional compensation for extra route mileage. By the provisions of the contract, the defendants retained the right to increase or decrease the number of school bus routes and the mileage of each, provided that no route was to have a compensable daily mileage of less than forty miles.[2] In the event that any route exceeded forty miles in length, the plaintiff

---

[2] "During the term of the Contract, the Board [the defendants] may from time to time revise the routes and increase or decrease the mileage thereon and may increase or decrease the number of routes . . . ; no route will have a paid daily mileage of less than 40 miles."

was to be paid "at the rate of $1.00 for each additional mile by which any route shall exceed 40 miles in length."

Each school bus route is made up of "loops." A morning loop commences with the pickup of the first student of a particular busload and ends with the delivery to the school of that busload of students. An afternoon loop commences with the pickup of a busload of students at a school and ends when the last of these students is delivered to his home. Each bus route may consist of several loops in the morning and several in the afternoon. The dispute in this case relates to connecting miles between the morning loops and afternoon loops, or the miles traversed by the bus between the school to which children are last delivered in the morning and the school where children are first picked up in the afternoon. The plaintiff contends that those connecting miles should be included in the calculation of route mileage, in determining whether a route exceeds forty miles, so that the plaintiff is entitled to additional compensation under the relevant contractual provision set out above. The trial court concluded that the connecting miles were to be counted in determining the length of a route and that the word "route," as used by the parties in their contract, referred to the distance traversed beginning with the picking up of the first child in the morning and ending with the delivery of the last child to his home in the afternoon.

Because the contract does not explicitly state the formula to be used in determining the number of miles designated by the term "route," that term is open to interpretation by the court. 17 Am. Jur. 2d, Contracts, § 241. A contract is to be construed

according to what may be assumed to have been the understanding and intention of the parties. *Downs v. National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316; *Bridge-Mile Shoe Corporation v. Liggett Drug Co.,* 142 Conn. 313, 318, 113 A.2d 863. That intention is to be determined from the language used, according to the situation of the parties and the circumstances of the transaction. *Ginsberg v. Mascia,* 149 Conn. 502, 506, 182 A.2d 4.

A contract is to be construed as a whole and all relevant provisions will be considered together. See *Blatt v. Star Paper Co.,* 160 Conn. 193, 200, 276 A.2d 786; 17 Am. Jur. 2d, Contracts, § 258. The contract between the parties represented an agreement to compensate the plaintiff for and to obligate it to "transport pupils to and from the public schools of the town of Fairfield, along regular bus routes established by the Board." Further, the contract states that "the transportation of a pupil shall be deemed to have begun when such pupil starts to enter the school bus and shall be deemed to have ended when the pupil has completed alighting from the bus." The court found that no children were transported on the connecting miles between morning and afternoon loops. The plaintiff is not instructed by the defendants where to take the buses during that time, nor do the defendants choose the route to be taken by each bus from the point of the last delivery in the morning to the first pickup point in the afternoon. The plaintiff was free to utilize any route deemed appropriate and free to use its buses in any way it wished between the morning and afternoon loops.

In construing the intended meaning of terms in a contract, the conduct of the parties regarding

their use is a proper consideration. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 343, 150 A.2d 597. The parties had operated under essentially similar contracts for the ten years prior to the time this dispute arose, and the plaintiff and the defendants never had a dispute over the calculation of route miles. The undisputed finding of the trial court was that the plaintiff never before asked for payment for these connecting miles and the defendants had not included them in calculating mileage, and that the plaintiff was aware that following the reduction in number of routes in 1972, the defendants assumed connecting miles would not be included in calculations.

After considering the facts found by the trial court, we hold that the court erred in concluding that the connecting miles between the last morning loop and the first afternoon loop were intended to be included in the calculation of route mileage.

### III

The contract between the parties included a provision requiring the plaintiff to furnish security for performance.[3] It is undisputed that the plaintiff failed to file a performance bond for the years beginning on September 1, 1972, and September 1, 1973, although it was requested to do so by the defendants. This failure by the plaintiff to secure its performance was the basis of a counterclaim by the defendants for damages in the amount of

---

[3] "V. *Security for Performance.* A. The Contractor shall furnish, at his own expense, a five (5) year performance bond in an amount equal to one (1) year's estimated payments and in a form and with corporate surety satisfactory to the Town, conditioned upon the fulfillment by the Contractor of all of the terms and conditions of the Contract."

$50,000. The trial court held that the plaintiff had breached the contract and awarded damages of one dollar to the defendants. While there is no doubt that a breach occurred, we find that the trial court was correct in limiting its award to nominal damages.

Recourse to a performance bond was never necessary because the plaintiff did, in fact, substantially perform. However, actual performance does not render ineffective the requirement that a bond be provided, so that a breach of contract did occur. It is true that the plaintiff has been spared the cost of premium payments on a performance bond, amounting to between two and four thousand dollars in each of the two years. Contrary to the claims of the defendants, we do not find that this saving by the plaintiff was made at the defendants' expense. By the terms of the contract, payment of premiums on the required performance bond was to be made by the plaintiff "at his own expense." The language of the contract on this point is explicit, and the court will accord language its natural and ordinary meaning. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393. As the defendants did not show that they were substantially damaged by the plaintiff's breach, the trial court was correct in awarding nominal damages. See 22 Am. Jur. 2d, Damages, §§ 7, 24.

We conclude the following: as to count one, the trial court correctly found the issues for the plaintiff but erred in its calculation of damages; as to count two, the trial court erred in awarding damages to the plaintiff; as to the defendants' counterclaim, the court was correct in awarding nominal damages to the defendants.

There is error in part; the judgment as to the first count is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue; the judgment as to the second count is set aside and the case is remanded with direction to render judgment for the defendants; the judgment as to the counterclaim is affirmed.

In this opinion the other judges concurred.