The plaintiff, a licensed real estate broker, brought this action to recover a commission for procuring a purchaser for the named defendant's property. The defendants counterclaimed for an alleged breach of the fiduciary duties by the *Page 533 
plaintiff as their agent.[1] After a trial to the jury, a verdict for the plaintiff was returned on the complaint and counterclaim and judgment was rendered thereon. The defendants have appealed.
The essential facts here are not in dispute. On March 23, 1973, the plaintiff and the defendants Anthony DelVecchio and Lucy DelVecchio entered into a written listing agreement for the sale of the named defendant's premises in West Haven. The agreement was prepared on a printed form furnished by the plaintiff. It authorized the plaintiff to act as the agent of the defendants in negotiating a sale of the premises and provided that the defendants would pay to the plaintiff "a commission of 6% of the selling price, if this property is sold during the term of this agreement, or if said agent submits a bonafied [sic] offer at the price herein quoted." The price quoted was $44,500.
During the term of the agreement the plaintiff brought the property to the attention of Alvin R. Holmes and Lillian A. Holmes (hereinafter the buyers). After some negotiation, the buyers made an offer of $43,500 which was accepted by the defendants Anthony DelVecchio and Lucy DelVecchio. The buyers and the defendants thereafter executed a contract for the sale of the premises. The buyers paid $1000 as a deposit to be held in escrow by the plaintiff until closing. The contract of sale provided that the buyers would have occupancy and possession on the date of closing or, in the alternative, that the defendants would pay $11 per day from the date of closing until the buyers obtained occupancy. At the closing the buyers requested the defendants to place a sum of money *Page 534 
in escrow to ensure that they would timely vacate the premises on or before a specific date. The defendants refused to agree to this modification of the agreement and left without completing the transaction.
The plaintiff claimed that he was entitled to his commission because he procured buyers ready, willing and able to purchase the property on terms agreeable to the sellers. The defendants argued that (1) no commission had been earned under the specific terms of the listing agreement; (2) the buyers were not willing to complete the transaction on the terms agreed to; and (3) the plaintiff had breached "his agency and fiduciary duty" and had prevented consummation of the sale by encouraging the buyers to insist upon the occupancy escrow at the time of closing. The defendants also counterclaimed for damages resulting from the plaintiff's alleged breach of fiduciary duties. The jury found for the plaintiff on the complaint and on the counterclaim. On appeal the defendants expressly abandoned their counterclaim. The defendants contend that the trial court erred in denying their motions to set aside the verdict and for judgment notwithstanding the verdict, and further erred in its charge to the jury. We will first consider the defendants' contention that no commission was earned under the terms of the listing agreement.
A broker employed under an ordinary listing contract is generally entitled to a commission when his efforts have resulted in procuring a customer who is ready, able and willing to purchase on the terms and conditions prescribed or agreed to by the seller. Walsh v. Turlick, 164 Conn. 75, 80,316 A.2d 759 (1972); Busker v. United Illuminating Co., 156 Conn. 456, 465, 242 A.2d 708 (1968); Martino v. Palladino, 143 Conn. 547, 548, 123 A.2d 872 (1956). A broker who sues for a commission on this basis *Page 535 
assumes the burden of proving that the customer produced was in fact ready, willing and able to buy. Lesser v. Altnacraig Convalescent Home, Inc.,144 Conn. 488, 491, 133 A.2d 908 (1957). As an alternative theory of recovery, the broker can also prevail by showing that he has procured a binding contract between the buyer and the seller, because ordinarily the broker has fully performed his task when he brings the parties to an enforceable agreement. Walsh v. Turlick, supra; Spring v. Nagle, 104 Conn. 23, 27, 131 A. 744
(1926). The execution of a mutual release by the parties to the sales agreement and retention by the seller of the deposit as liquidated damages have been held to be proof of the binding effect of the contract which entitles the broker to a commission on that theory. McHugh v. Bock,134 Conn. 519, 522, 58 A.2d 740 (1948).
The broker's right to a commission, however, is controlled by the provisions of his employment contract with the principal. Craig v. Margrave,84 Nev. 635, 637, 446 P.2d 653 (1968). The terms of a particular listing agreement may make the broker's right to a commission expressly dependent upon specified conditions, such as the consummation of the transaction and the full performance of the sales contract. Walsh v. Turlick, supra, 83; Spring v. Nagle, supra, 26. In such an instance, the ordinary theories regarding the broker's right to recover do not apply; Walsh v. Turlick, supra; and he is not entitled to a commission unless the specific condition has been fulfilled. See generally 74 A.L.R.2d 437, 462-99. "The authority given [the broker] by the owner may make his right to a commission depend upon the actual consummation of the transaction, and he then takes the chance of the owner's refusing to convey to a customer he has procured." Stagg v. Lawton,133 Conn. 203, 210, 49 A.2d 599 (1946). *Page 536 
To be enforceable, the broker's employment contract with his principal must be in writing and must contain the information enumerated in General Statutes 20-325a (b). Subsection (b)(4) of that statute requires the agreement to set forth "the conditions of such contract or authorization." See also Regs., Conn. State Agencies 20-328-1. The March 23, 1973 listing agreement entered into by the plaintiff and the defendants Anthony DelVecchio and Lucy DelVecchio satisfies the requirements of 20-325a (b) for an open listing, and would appear to control the plaintiff's right to a commission. In its memorandum of decision on the defendants' motion to set aside the verdict and motion for judgment notwithstanding the verdict, the trial court expressed the view that this listing agreement, entitled "Permission to Sell," was "merely a preliminary agency authorization to Plaintiff to solicit buyers for the premises, based on an initial asking price." The court further concluded that the defendants had "modified and amended their original arrangement with Plaintiff, by virtue of the subsequent Sale Agreement." We do not agree. While it has been held that separate documents relating to the same brokerage agreement may collectively meet the specific requirements of 20-325a (b); Good v. Paine Furniture Co., 35 Conn. Sup. 24, 26-27,391 A.2d 741 (1978); any modification of the specific conditions of the contract or authorization must be in writing in order to satisfy General-Statutes20-325a (b)(4). An examination of the sale agreement subsequently executed by the defendants Anthony DelVecchio and Lucy DelVecchio and the buyers reveals no express modification of the conditions of the original brokerage arrangement. The only reference made in it to the plaintiff broker is the provision that the $1000 cash deposit payment was to be held in escrow by him until closing. It in no way purports to modify the employment contract *Page 537 
between the plaintiff and the defendants. The conditions of the original brokerage agreement, therefore, are determinative of the plaintiff's rights in this case.
In the listing agreement the defendants agreed to pay a commission to the plaintiff (1) if the property was sold during the term of the agreement, or (2) if the agent submitted a bona fide offer at the price of $44,500. Because it is undisputed that a bona fide full price offer of $44,500 was never submitted, the plaintiff's right to a commission, if any, must arise under the provision in the agreement concerning the sale of the property. The plaintiff contends that the "sale" did take place when a ready, willing and able buyer was produced and the contract of sale was executed. While this reasoning might apply in the case of an ordinary unconditional brokerage arrangement; Walsh v. Turlick, 164 Conn. 75, 80,316 A.2d 759 (1972); Covino v. Pfeffer, 160 Conn. 212,215, 276 A.2d 895 (1970); McHugh v. Bock,134 Conn. 519, 522, 58 A.2d 740 (1948); it would not control where the broker's right to a commission was expressly made dependent upon the occurrence of a specific condition. Walsh v. Turlick, supra, 83; Stagg v. Lawton, 133 Conn. 203, 210,49 A.2d 599 (1946). We must now determine what the parties meant by the phrase "if this property is sold during the term of this agreement."
A contract is to be construed according to what may be assumed to have been the understanding and intention of the parties. Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397 406-407, 365 A.2d 1086
(1976); Downs v. National Casualty Co., 146 Conn. 490,494, 152 A.2d 316 (1959). The intent of the parties is to be determined from the language used in the contract, interpreted in light of the situation of the parties and the circumstances of *Page 538 
the transaction. Milford Education Assn. v. Board of Education, 167 Conn. 513, 522, 356 A.2d 109
(1975); Ginsberg v. Mascia, 149 Conn. 502, 506,182 A.2d 4 (1962).
A literal interpretation of the phrase "if this property is sold during the term of this agreement" would seem to imply that the plaintiff had an absolute right to a commission upon a consummation of a sale of the property, whether the particular purchaser was procured by the plaintiff, by the sellers, or by some other agent employed by the sellers. In effect, this appears to be an attempt to create an exclusive right to sell listing, whereby the plaintiff broker would be entitled to a commission if he or anyone else effectuated a sale of the property during the term of the agreement. Covino v. Pfeffer, supra, 215. Such an attempt to create by implication an exclusive right to sell listing, however, must fail. Section 20-328-1 of the regulations of the real estate commission regarding the conduct of real estate brokers and salesmen expressly provides that the exclusive right to sell "shall be clearly indicated in the listing agreement." (Emphasis added.) This is a mandatory direction to set forth expressly the nature of this special type of agency authorization within the terms of the agreement. The listing agreement in the present case does not contain the phrase "exclusive right to sell," nor does it otherwise clearly indicate the intention to create that particular type of arrangement. We must therefore construe the agreement as creating only an open listing.
We now consider whether the language used created merely an ordinary open listing agreement or a conditional one. The specific and exclusive conditional language employed in this listing contract is beyond the ordinary employment to sell. McHugh *Page 539 
v. Bock, 134 Conn. 519, 520, 58 A.2d 740 (1948). The phrase "if this property is sold" clearly and unambiguously looks to a completed transaction as the triggering event that entitles the broker to his commission. This agreement was drafted on a printed form provided by the plaintiff. The plaintiff is not an unsophisticated party, but rather an established broker with over twenty years of real estate experience. He could easily have made his right to a commission dependent only upon procuring a customer who is "ready, able and willing to buy on terms and conditions prescribed or agreed to by the seller"; Walsh v. Turlick,164 Conn. 75, 80, 316 A.2d 759 (1972); which is a condition commonly found in brokerage contracts. He chose, however, to employ only the specific conditional language used here, and we must assume that he was aware of its import. We construe this language in the brokerage agreement as making the plaintiff's right to a commission dependent upon the actual consummation of the transaction. Any other conclusion regarding the legal effect of this language would contravene its plain and unambiguous meaning, interpreting the contract as a whole, and would therefore be unreasonable. Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397,403, 365 A.2d 1086 (1976).
Because we have determined that the plaintiff's right to a commission was expressly made dependent upon actual consummation of the transaction, the general rules regarding recovery by a broker under an open listing do not apply. Walsh v. Turlick, supra; Stagg v. Lawton, 133 Conn. 203, 49 A.2d 599
(1946). Merely obtaining a binding executory contract is not enough. See, e.g., Downing v. H. G. Smithy Co., 125 A.2d 272 (D.C. Mun. Ct. App. 1956); E. A. Strout Realty Agency, Inc. v. Gargan,328 Mass. 524, 105 N.E.2d 208 (1952); Hersh v. *Page 540 
Kelman, 61 Ohio L. Abst. 363, 104 N.E.2d 35 (1951); Guy Stickney, Inc. v. Underwood, 67 Wash.2d 824,410 P.2d 7 (1966); Sams v. Olympia Holding Co., 153 Wash. 254, 279 P. 575 (1929). The specific condition must be fulfilled. Stagg v. Lawton, supra.
It is undisputed that the sales transaction in the present case was never consummated. We conclude, therefore, as a matter of law that the plaintiff did not earn his commission under the particular terms agreed to in this open listing contract.
A judgment notwithstanding the verdict may be rendered where the application of legal principles to facts conclusively established by the pleadings or judicially admitted shows that the party against whom the verdict was rendered is entitled to a judgment. Gesualdi v. Connecticut Co.,131 Conn. 622, 627, 41 A.2d 771 (1945). On the admitted and undisputed facts of this case it is clear that the plaintiff is not entitled to a commission pursuant to the conditions specified in the listing agreement. The court should have granted the defendants' motions to set aside the verdict and for judgment notwithstanding the verdict.
Because what we have said thus far is sufficient to dispose of this appeal, we need not address the defendants' additional claims of error.
 There is error, the judgment is set aside and the case is remanded with direction to grant the defendants' motions to set aside the verdict and to render judgment notwithstanding the verdict.
In this opinion D. SHEA and DALY, Js., concurred.