[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Danbury Mall Associates Limited Partnership, filed this action against the defendant, L L International, Ltd., on December 28, 1988 claiming damages and other relief resulting from a breach of a lease agreement.
The parties entered into a written lease (Plaintiff's Exhibit 1) for the use and occupancy of a store on August 1, 1985 which required payment of a minimum monthly rental of $3,843.75 by the defendant. The lease also called for payment of real estate taxes, energy costs, rubbish removal, common area maintenance and construction costs as additional rent. The lease also provides for the payment of reasonable attorney's fees and costs for the prevailing party in any legal action commenced to enforce any term of the lease. CT Page 8395
At the time of execution of the lease by the parties, the Mall was still under construction. The terms of the lease were negotiated by a Mr. Wilmot the plaintiff's leasing agent) and Mr. Barsamian (the defendant's president).
The defendant seeks rescission of the lease claiming that the plaintiff breached its covenant of quiet enjoyment, and that the leased premises were unfit or untenantable, and further that the plaintiff violated the Connecticut Unfair Trade Practices Act because of the plaintiff's agent who allegedly made fraudulent representations upon which the defendant relied. Mr. Barsamian testified that since the lease required that the tenant construct and pay for all of the improvements necessary to occupy the demised premises and conduct a hair salon business, the defendant spent approximately $225,000.00 for these improvements. The tenant was also charged with approximately $10,500.00 for the cost of constructing the unfinished space. The defendant further claims, through the testimony of Mr. Barsamian, that the defendant incurred substantial operating losses of approximately $75,000.00 prior to vacating the premises.
The plaintiff served the defendant with a notice to quit and a summary process action and obtained judgment of possession on or about November 15, 1988 (Plaintiff's Exhibit 3). The cause of action was based on nonpayment of rent.
The plaintiff mitigated its damages by taking reasonable steps in reletting the premises within a seven month period after obtaining a judgment of possession.
The defendant did not satisfy its burden of proving (a) CUTPA violation, (b) that the plaintiff breached its covenant of quiet enjoyment, and (c) that the leased premises were unfit or untenantable. Defendant also has not satisfied this court that the plaintiff's agent made fraudulent misrepresentations upon which the defendants relied to their detriment. Mr. Barsamian, the defendant's agent, would claim that all the representations alleged to have been made in Las Vegas, Nevada, during May of 1985, were the key factor in his decision to locate and build a hair salon at the Danbury Fair Mall. He testified that in September of 1986, several months before opening for business, he learned that there were two additional hair salons at the Danbury Fair Mall for a total of five, including L L International. Mr. Barsamian testified that he had been engaged in the business of hair salons since 1972 and that his company owned and operated approximately 25 hair salons, 23 of which were located in malls. He admitted to being somewhat of an expert on mall leases, yet had no CT Page 8396 explanation as to the absence of written language in the lease containing the "key factor" that there would be no more than three hair salons at the Danbury Fair Mall. Although this representation was made before the Danbury Fair Mall opened for business and while it was still under construction, the actions of Mr. Barsamian following execution of the lease do not support his claim for rescission of the contract.
The defendant not only took occupancy in spite of the fact that other hair salon businesses subsequently began their operations, but he also fell behind in the payment of rent and additional charges almost immediately and prior to the presence of five hair salon businesses at the Mall. Also, Mr. Barsamian admitted that the "late payments have been very embarrassing to us" (Plaintiff's Exhibit 5) in a letter dated November 16, 1987 signed by the defendant. Finally, the admission by Mr. Barsamian on cross-examination that he had closed two other failed hair salons at locations unrelated to the plaintiff provides no support for the defendant's claims.
The court finds that the plaintiff has elected to terminate the tenancy based upon nonpayment of rent. This breach of a lease for commercial property provides the plaintiff with the present cause of action for damages for breach of contract. The evidence produced clearly demonstrates that the plaintiff terminated the tenancy thereby creating a cause of action for breach of contract. The evidence also indicates that the plaintiff mitigated its damages by trying to relet the premises during the seven months period. In contract actions, the measure of damage is reached by placing the injured party in the same position as it would be in had the contract been fully performed Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397 (1976). In an action for breach of a lease, the amount of rent agreed upon by the parties is a proper measure of damages. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384 (1989). Plaintiff's Exhibit 2 was a customer billing history that documented all charges made to the defendant's account as well as payments made by the defendant. Mr. Lankford, the credit manager for the plaintiff's management company, testified that the total amount due to the plaintiff was $78,416.97. There was no evidence offered to refute or contradict the total amount due. Mr. Lankford also testified that the plaintiff had expended the sum of $2,000.00 in attorney's fees and $400.00 in costs. Mr. Lankford testified that after obtaining judgment of immediate possession, the plaintiff attempted to procure a new tenant to relet the vacated leased premises. The premises were in fact relet in June of 1989.
Since the court finds no credible evidence to support a CT Page 8397 claim of constructive eviction, the court finds that the defendant has failed to meet it burden of proof with regards to that special defense. The defendant failed to prove that the premises were untenantable and "unfit for its intended purpose" because its business was unprofitable and a direct result of the defendant's actions. Likewise, the defendant failed to prove that the plaintiff breached its covenant of quiet enjoyment by fraudulently representing that there would be no more than three hair salons in the Danbury Fair Mall. This has already been discussed above.
Therefore, the counterclaim of fraudulent misrepresentation must fail. The counterclaim alleging that the plaintiff breached the defendant's covenant of quiet enjoyment must also fail. The court has already found that the defendant could not and did not prove a CUTPA violation with any credible evidence.
The court therefore enters judgment in favor of the plaintiff in the amount of $78,416.97 and attorney's fees in the amount of $2,000.00 which the court finds reasonable. The court will not award costs until a bill of cost is submitted by the plaintiff setting forth each itemized cost that it is claiming.
Rodriguez, J.