[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY THIRD PARTY
CT Page 1636
By a complaint dated December 3, 1994, plaintiff Susan Plinkus ("Plinkus"), an employee of Southern New England Telephone Company ("SNET"), sought compensation for personal injuries and medical expenses from the defendant, Connecticut Light and Power Company/North East Utilities ("CLP/NU"). While on the job, Plinkus fell from a utility pole located on Route 97 in Baltic, Connecticut. In her complaint, Plinkus alleges that her fall was directly caused by the negligence of CLP/NU in failing to properly maintain and repair the pole. On April 6, 1992, the case was claimed to the trial list.
On August 17, 1992, CLP/NU filed a third party complaint against SNET. In their complaint, CLP/NU alleged that by a Joint Line Agreement ("Agreement") dated July 1, 1936, SNET and CLP/NU, as joint owners of the utility pole, agreed that "[e]ach party shall be liable for all damages for such injuries to its own employees or its own property that are caused by the concurrent negligence of both parties hereto, or that are due to causes which cannot be traced to the sole negligence of either party hereto." (Article 13(b) of the Agreement).
Subsequent to CLP/NU's third-party action, SNET sought and was granted permission to intervene in the case as a plaintiff against CLP/NU. SNET sought to recover SNET's workers compensation payments made to Plinkus after her fall.
By a stipulation filed and dated June 3, 1994, the third-party plaintiff, CLP/NU and the third-party defendant, SNET, agreed to transfer the entire case from the jury list to the court side trial list. Both parties agreed to so on the understanding that both SNET and Plinkus were about to withdraw their respective complaints against CLP/NU. On June 20, 1994, Plinkus did withdraw her initial complaint against CLP/NU. Then on July 6, 1994, the intervening plaintiff, SNET, also withdrew its complaint against CLP/NU. Thus, the only current action before this court is CLP/NU's third-party complaint against SNET.
On October 3, 1994, SNET moved for summary judgment on the ground that there are no material issues of fact in dispute and that it is entitled to summary judgment as a matter of law. CT Page 1637 In particular, SNET's asserts that it does not have to indemnify CLP/NU for any damages that it suffered as the result of the original Plinkus claim because CLP/NU was never found to be liable.
CLP/NU, however, asserts that by the plain language of the agreement, SNET is responsible for CLP/NU's legal and related expenses incurred as a result of defending the original Plinkus action.
Both parties have submitted timely memorandum of law in support of their respective positions.
DISCUSSION
"Summary judgement is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law. The motion for summary judgement is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989).
"The party seeking summary judgement has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgement as a matter of law . . . [A]nd the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. In deciding a motion for summary judgement, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarezv. Dickmont Plastics, Corp. , 229 Conn. 99, 105-06, 639 A.2d 507
(1994).
"Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Bank of Boston v.Schlesinger, 220 Conn. 152, 158, 2592 A.2d 872 (1991) quotingThompson Peck, Inc. v. Harbor Marine Contracting Corp. ,203 Conn. 123, 131, 523 A.2d 1266 (1987). This case turns on the construction of Article 13 of the contract.[1]
CT Page 1638
Article 13 of the agreement states in part, "[w]henever any liability is incurred by either of the parties for damages for injuries to the employees or for injury to the property of either party, or for injuries to other persons or their property, arising out of the joint use of poles under this agreement . . . the liability for such damages as between the parties shall be as follows . . . (f) In the adjustment between the parties hereto of any claim for damages arising hereunder, the liability assumed hereunder by the parties shall include in addition to the amounts paid to the claimant, all expenses incurred by the parties in connection therewith, which shall comprise costs, attorney's fees, disbursements and other proper charges and expenditures."
SNET claims that it is only obligated to pay the legal fees and costs of CLP/NU under subsection (f) if and only if liability is found to exist. Since Plinkus withdrew her complaint before any liability was found, CLP/NU can not seek relief under Article 13. CLP/NU, however, disagrees and states that under subsection (f) "any liability for damages" as stated in the introduction of the Agreement includes legal fees referenced in subsection (f) regardless of whether either party had to pay liability damages to an injured employee.
Upon a close examination of the contract language, however, the court finds that SNET's reading of Article 13 is the correct one. Article 13 specifically begins with a qualifying condition precedent that: "[w]henever any liability is incurred by either of the parties for damages for injuries to the employees . . . the liability for such damages as between the parties shall be as follows." In subparagraphs (a) through (f), the specific damages each party is liable for are explained and described in more detail. Thus, it is only when liability is incurred that subsections (a) through (f) are triggered. Where no liability is found, as in this case, Article 13 has no application.
A closer reading of subparagraph (f) also confirms the construction of this article. That subparagraph reads in part, "[i]n the adjustment between the parties hereto of any claim for damages hereunder, the liability assumed by the parties shall include in addition to the amounts paid to the claimant, all expenses incurred by the parties in connection therewith, which shall comprise. . . attorney's fees . . ." (Emphasis CT Page 1639 added.)
The underlined phrase merely restates the condition precedent as found in the introduction, and modifies it by adding the attorney fees of the other party in addition to the damages that arise out of a finding of employer liability. This provision is consistent with the other subsections (a) — (e) which articulate other types of specific damages and the apportionment thereof. "A contract is to be construed as a whole and all relevant provisions will be considered together."Lar-Rob Bus Corp. v. Fairfield, 170 Conn. 397, 407,365 A.2d 1086 (1967).
Because the contract is clear and unambiguous, it will be given effect according to its terms. See Leonard ConcretePipe Co. v. C.W. Blakeslee Sons, Inc., 178 Conn. 594, 599,424 A.2d 277 (1979)[.] Thus, the court finds that the SNET motion for summary judgment should be granted because there are no material issues in dispute and they are entitled to judgment as a matter of law.
CONCLUSION
For the above stated reasons, SNET's motion for summary judgment is hereby granted.
Hurley, J.