[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These two actions both involve a lease of commercial space in Westport by Gorham Island Associates (Gorham Island), as lessor, to Tridex Corporation (Tridex), as lessee, and were consolidated for trial.[1]
In the first of the two counts of its amended complaint dated April 18, 1994, Tridex alleges that it is a Connecticut corporation which leased 5,700 square feet of office space at a building known as One Gorham Island in Westport; that the lessor, Gorham Island, made certain representations regarding payment of taxes, electricity, and the security deposit of $28,500; that Gorham Island further represented that certain work at the subject premises would be completed in a timely fashion, which was not done; that such representations induced Tridex to enter into the lease; that such representations were false and fraudulent; and that Gorham Island promised a monthly rent CT Page 13847 abatement of $3,525 during the second year of the lease, but refused to make such payment. Tridex claims a recision of the lease, the return of its security deposit, and punitive damages plus attorney's fees under General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
In the action instituted by Gorham Island as plaintiff, Gorham Island alleges that it is a limited partnership; that on October 31, 1988, it leased space on the first floor of One Gorham Island to Tridex as lessee; that Tridex took possession of the subject premises on February 23, 1989; that on or about November 1, 1990, Tridex vacated the premises and purported to rescind the lease; and that Tridex has not paid the rent that was due under the lease. Gorham Island claims "monetary damages" from December, 1990, when Tridex left the premises and ceased paying rent, until May 1, 1994, when the premises were fully relet, plus "attorney's fees, refitting expenses, and interest as set forth in the lease."
Tridex denied the material allegations of Gorham Island's complaint, and also filed special defenses and a counterclaim. Its special defenses allege that Gorham Island has "unclean hands;" that it is "estopped" from pursuing its claim; that it has violated CUTPA and the implied covenant of good faith and fair dealing; that it has engaged in fraudulent misrepresentation; and that Gorham Island reentered the subject premises but failed to mitigate its damages by reletting the subject premises.
Tridex's counterclaim against Gorham Island is similar to its complaint in the first of the above two actions, and contains three counts. In the first count, Tridex alleges that the lessor, Gorham Island, made certain representations regarding payment of real estate taxes, electricity charges, rent abatements, investment of the security deposit in bank certificates and that certain construction work would be completed in a timely fashion; and that these were fraudulent representations upon which Tridex relied, justifying the recision of the lease. In the second count of the counterclaim, Tridex claims that the actions of the lessor violate CUTPA, and the third count contends that Gorham Island breached the lease. In its prayer for relief in the counterclaim, Tridex seeks to rescind the lease, recover its security deposit, and punitive damages, attorney's fees and costs pursuant to CUTPA. CT Page 13848
The starting point for analyzing this case is the written lease executed by the parties. This lease of October 31, 1988 has approximately 50 pages, plus appendixes, and was negotiated by attorneys for both the lessor and lessee, both of whom are sophisticated and knowledgeable in the field of real estate, and was signed by Robert S. Silver, a "general partner" on behalf of Gorham Island, and by Seth M. Lukash, as president of Tridex for the lessee.
The lease provides in pertinent part that the term was to begin on February 1, 1989, covering 5,700 square feet on the first floor of One Gorham Island; that the lease period was for seven years; that Gorham Island agreed to make certain improvements in accordance with plans and specifications attached to the lease; that the rent was $171,000 for the first year of the lease in equal monthly installments of $14,250, with rent increases annually thereafter; that Gorham Island agreed to keep the building in good condition; that Gorham Island was authorized to reenter the premises if Tridex defaulted in the payment of rent; that Tridex was to pay all electrical charges and any increase in municipal taxes over a base year; and that the security deposit of two months rent was to be invested in a certificate of deposit.
Connecticut law regarding the right of a lessee to rescind a lease begins with the proposition that "a lease is a contract . . . and the rules applying to contracts generally with respect to breach, the right to damages for breach, and the measure of damages, apply to leases as well as contracts." (Citation omitted: internal quotation marks omitted.) Rokalor,Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384,391, 558 A.2d 265 (1989). A contract, or a lease in this case, may be rescinded not on account of every breach, no matter how minute or inconsequential, but only if there is a material breach. "A material breach has been defined as one that would justify the other party to suspend his own performance of the contract. . . . The breach must be material, that is, it must be so important that it vitiates or destroys the entire purpose for entering into the contract. . . . Contract law has always distinguished between `material' and `immaterial' breaches. If a breach is immaterial, the existing rights of the parties do not change. The contract remains enforceable although the breach may occasion liability for damages, if any can be proved. . . . A material breach, on the other hand, does affect the substantive rights of the parties. A substantive or material breach is one CT Page 13849 which touches the fundamental purpose of the contract and defeats the object of the parties in making the contract." (Citations omitted; internal quotation marks omitted.) A. Prete SonConstruction v. Madison, Superior Court, judicial district of New Haven at New Haven, Docket No. 3103073 (October 4, 1994, Healey, S.T.R.).
Tridex offered six separate reasons to justify its claim that the lease should be rescinded, and each one of these reasons will be examined separately in order to determine whether it constitutes a material breach of the lease, which in turn would justify a recision of the lease. The first ground for recision is the claim by Tridex that Gorham Island failed to place the security deposit in an interest bearing certificate of deposit as required by the lease. The evidence indicated that the money was deposited in Gorham Island's operating account. However, Gorham Island has previously paid to Tridex the amount Tridex would have received as interest had the security deposit been invested in a certificate of deposit. Moreover, Gorham Island agrees that it is obliged to credit $28,500, the amount of the security deposit, to any award of damages found due to it as the lessor.
It is also evident that Tridex had vacated the premises and purported to rescind the lease before it even learned of Gorham Island's failure to deposit the security deposit in a certificate of deposit. This claim, in other words, falls into the category of an "after-thought" since it was not included in a letter dated October 29, 1990, from Tridex' counsel to Gorham Island indicating the lessee's intent "to move for rescission of the lease on the following grounds," none of which referred to the security deposit.
The second claim by Tridex as justifying a recision of the lease is Gorham Island's alleged failure to pay Tridex $3,525 per month during each of the twelve months during the second year of the lease. This obligation, however, does not appear in the lease, but rather is in a so-called "side" letter from R. S. Silver Company, the broker on the subject lease, to Tridex. It is true, of course, that Robert S. Silver is the principal of both R. S. Silver Company, and of Gorham Island, but nevertheless the promise of $3,525 per month was not made by Gorham Island, the lessor, and does not warrant a recision of the lease for this reason. The evidence indicated that Mr. Silver made this offer to Mr. Lukash to induce Tridex to enter into the subject lease in order to insure his real estate brokerage CT Page 13850 company of a commission if the lease was executed. The promise of such payment to Tridex was and remains an obligation of R. S. Silver Company.
Moreover, the attempt to make Gorham Island liable for this payment is an attempt to add a new term to a lease. The lease provides that it contains the entire agreement between the parties and that it may not be changed or modified, except in a writing executed by the party against whom enforcement of such change is sought. There was no such written modification. In addition, Tridex acknowledges in the lease that it is not relying on any promises or representations of the lessor that are not in the lease.
It is true that over the objection of Gorham Island, evidence of this agreement by the broker was admitted into evidence in order to determine whether such agreement possibly fell into one or more of the exceptions referred to in TIE Communications, Inc.v. Kopp, 218 Conn. 281, 288-89, 589 A.2d 329 (1991). Upon review of the evidence, the court concludes that (1) there is no ambiguity in the lease; (2) any such side letter would result in varying the terms of the lease; (3) the lease is complete; and (4) there is no mistake or fraud. Therefore, the letter from R. S. Silver Company to Tridex is irrelevant to these two actions.
Mr. Lukash, on behalf of Tridex, also claims that he received an oral promise from Mr. Silver that Tridex would receive the same provision for the escalation of real estate taxes and for the payment of electric charges as did Gorham Island's other tenants. This alleged promise was denied by Mr. Sliver, and furthermore does not appear credible, nor does it make much sense. The evidence indicates that one of the two tenants who had signed leases before Tridex executed the subject lease had provisions regarding tax escalation and electric charges which were similar to that negotiated between Gorham Island and Tridex, and that one other existing tenant had somewhat different provisions in its lease. These differences do not constitute a material misrepresentation by the lessor but rather are a result of the dynamics of the lease negotiation process between a landlord and different tenants. Moreover, as pointed out previously in regard to the side letter from the broker, this alleged promise does not appear in the lease or in any written modification thereof, and hence is irrelevant.
Tridex further contends that Gorham Island either never CT Page 13851 completed or did not timely complete a so-called "punch-list" of unfinished items. These items are quite minor in nature, and did not by any means constitute a material breach of lease as previously defined. The failure to complete the items in question did not interfere with use of the premises by Tridex, or constitute a "constructive eviction," which is defined as actions or omissions of a lessor that render the premises "untenantable."Connecticut National Bank v. Douglas, 221 Conn. 530, 538-39,606 A.2d 684 (1992).
After some 19 days of trial, approximately 10 witnesses, over 100 exhibits and 150 pages of briefing, the conclusion is inescapable that Tridex leased more space than it required, that the company was having some financial difficulties on or about December 1, 1990, when it vacated the demised premises, and that Tridex had discussions with Gorham Island about leasing different and smaller space at One Gorham Island, which never materialized. Tridex vacated the premises and found smaller rental space elsewhere in Westport, thereby saving approximately $10,000 a month. It is also clear that Gorham Island never accepted the surrender of the lease, nor did it attempt to terminate the lease. It follows, therefore, that Gorham Island is entitled to recover damages from Tridex for the latter's material breach of the lease by vacating the premises and failing to pay rent after December 1, 1990. Moreover, the court does not credit any of the various justifications offered by Tridex to rescind the lease because none represents a material breach of the lease.
As to the proper measure or amount of damages to which Gorham Island is entitled, the award must place the injured party in the same position as it would have been in if the contract had been fully performed. Lar-Rob Bus Corporation v. Fairfield,170 Conn. 397, 404-405, 365 A.2d 1086 (1976). When a tenant breaches a commercial lease, "the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender" and continue the tenancy. Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., supra, 18 Conn. App. 388. When the latter occurs, as it did in this case, the lessor "may sue to recover the rent due under the terms of the lease . . . [and] is under no duty to mitigate damages." Id. In this regard, it should be noted that Gorham Island continued to send monthly invoices to Tridex after it vacated the premises, and that the lease specifically provides that reentry by the lessor after a default shall not be considered "an acceptance of surrender of this Lease." CT Page 13852
In this case, Gorham Island sues to recover the rent due under the terms of the lease from December 1, 1990, until May 1, 1994, when the premises were fully relet. This figure amounts to $685,185. To this amount must be added unpaid electrical charges for the demised premises, as well as unpaid taxes due under the tax escalation clause. These two charges amount to $43,818 and $43,955, respectively, totalling $772,958. The lease further provides in section 19.01 that the lessor is entitled to interest on any bill sent to the lessee for unpaid rent and related charges. Interest at 10% per year, from December 1, 1990 to May 1, 1994, on $772,958 amounts to $264,094, for a total of $1,037,052.
Tridex, however, is entitled to certain credits, viz., $28,500 for the security deposit, and certain rents received by Gorham Island for the subject premises after Tridex vacated the premises. Gorham Island, in other words, although under no legal obligation to relet, did in fact make bona fide efforts to do so, and the result is a credit to Tridex in the amount of $122,887, plus interest at 10% from December 1, 1990, to the date of this judgment, or $49,559, for a total credit of $172,446.[2] Thus, the total due from Tridex after applying this credit is $864,606.
The same provision authorizing the addition of interest also gives Gorham Island the right to collect a reasonable attorney's fee, which is found to be $124,000. Thus, judgment may enter against Tridex in the action brought by Gorham Island in the amount of $988,606,[3] and judgment may also enter in favor of Gorham Island as to the counterclaim filed by Tridex in that action. In the suit brought by Tridex, judgment may enter for the defendant Gorham Island. Both the counterclaim and Tridex' own action are premised on its claim that Gorham Island violated CUTPA. For the reasons stated above, however, it is clear that Tridex was not constructively evicted from the subject premises, nor did Gorham Island engage in any unfair or deceptive practices, but rather only exercised its rights under the lease.
Gorham Island, as the prevailing party, is entitled to costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 12th day of December, 1995. CT Page 13853
William B. Lewis, Judge